IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SCOTT EBY, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) No. 19 C 8404 |
|     v. | ) |
| | ) Judge John Z. Lee |
| CHRISTIAN OKEZIE, ILLINOIS DEPARTMENT OF CORRECTIONS, WEXFORD HEALTH SOURCES, INC., EVARISTO AGUINALDO, TINA TOMARAS, KARA MATAKIEWICZ, AMY BARTLETT, KRISTA CARNAHAN, LIDIA LEWANDOWSKA, SERGEANT KENYON BAILEY, LATONYA WILLIAMS, ROZEL ELAZEGUI, WENDY DYBASS, LESLIE WILKING, AMY RUE, MICHELLE DALTON, ALETHEA HARPER, VIRGINIA GARCIA, JERRI ANGELOFF, GERALD DIMAILIG, DAWN CETTA, DINA PAGE, CHRISTINE WITOWSKI, JENNIFER HENNING, and EMMANUEL EGBE, | ) |
| | ) |
|     Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Scott Eby brought this action against Defendants Illinois Department of Corrections ("IDOC"); Wexford Health Sources, Inc. ("Wexford"); certain medical personnel, Christian Okezie, Evaristo Aguinaldo, Tina Tomaras, Kara Matakiewicz, Amy Bartlett, Krista Carnahan, Lidia Lewandowska, La Tonya Williams, Rozel Elazegui, Wendy Dybass, Leslie Wilking, Amy Rue, Michelle Dalton, Alethea Harper, Virginia Garcia, Jerri Angeloff, Gerald Dimailig, Dawn Cetta, Dina Page, Christine

Witowski, Jennifer Henning, and Emmanuel Egbe (collectively referred to as the "Individual Medical Defendants"); and Sergeant Kenyon Bailey, an IDOC employee. In the complaint, Eby asserts claims under 42 U.S.C. § 1983, the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, and the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*

Each Defendant has filed a motion to dismiss Eby's claims pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons below, the Individual Medical Defendants' motion to dismiss is denied; Sergeant Kenyon Bailey's motion to dismiss is denied; Wexford's motion to dismiss is granted; and IDOC's motion to dismiss is granted.

## I. Background

### A. Facts[1]

During the period relevant to this lawsuit, Eby was incarcerated at Stateville Correctional Center ("Stateville"). 2d Am. Compl. ("Compl.") ¶ 2, ECF No. 71. He states that, on or around December 26, 2017, he suffered a severe injury to his left shoulder while exercising, resulting in extreme pain that affected his arm's mobility. *Id.* ¶¶ 31–32. In addition to interfering with everyday activities like sleeping, the pain prevented him from climbing in and out of his assigned top bunk. *Id.* ¶ 32. Eby later learned that this shoulder injury was "significant" and that he may have had a torn rotator cuff. *Id.* ¶ 40.

---

[1] The Court "accept[s] as true all well-pleaded facts alleged" in reviewing a motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

At an initial medical visit around two days after the injury, Eby saw either Dr. Okezie or Dr. Elazegui, as well as Nurse Dybass and Nurse Wilking. *Id.* ¶ 33. Eby received muscle relaxer and Motrin, but he was denied a low bunk permit despite the severe pain, swelling, and limited motion in his left shoulder and his "expressed inability" to climb to his assigned top bunk. *Id.* ¶ 33. He returned around five days later for an x-ray. *Id.* ¶ 34.

Then, he waited. *Id.* Eby alleges that his follow-up appointment, when he was supposed to see Dr. Okezie, Dr. Elazegui, or Dr. Aguinaldo, was "continuously rescheduled." *Id.* Two months after his x-rays were taken, Eby finally saw Dr. Aguinaldo and Nurse Rue to review the images. *Id.* ¶ 36. Despite reiterating the constant and extreme pain in his left shoulder and the difficulty he had climbing into his bunk, Dr. Aguinaldo did not issue him a low bunk permit. *Id.* Instead, he informed Eby that only Dr. Okezie, the Stateville Medical Director, had that authority, and put Eby on Okezie's schedule.

Another month passed before Eby's next follow-up appointment, and then, instead of seeing Dr. Okezie, he was treated by Physician Assistant Williams and Nurse Harper. *Id.* ¶ 39. He told them again about the pain and difficulty he was having with the top bunk, but still did not receive a low bunk permit. *Id.*

During this four month period, Eby alleges, he visited the nurse's station multiple times to report his pain and discuss his need for a low bunk permit. *Id.* ¶¶ 35, 37. But the nurses—Rue, Lewandowska, and Dalton—ignored his repeated

3

requests and "simply informed [him] that his follow up appointments had been rescheduled." *Id.* ¶¶ 35.

While he was awaiting treatment, Eby slept "for many weeks" on the concrete floor of his cell, because his injury prevented him from climbing to his top bunk. *Id.* ¶ 38. This continued until March 31, 2018, when Sergeant Kenyon Bailey—an IDOC employee—ordered him to stop sleeping on the floor. *Id.* Eby alleges that Sergeant Bailey knew about his extreme pain and his repeated requests for a low bunk permit, but ordered Eby to climb onto the top bunk anyway. *Id.*

On April 19, 2018, Eby finally saw Dr. Okezie, as well as Nurse Matakiewicz and Nurse Garcia. *Id.* ¶ 40. After advising Eby that he may have a torn rotator cuff, Dr. Okezie told him he would grant him a low bunk permit. *Id.* He also prescribed Tramadol, a narcotic pain reliever, and Robaxin, a muscle relaxer. *Id.* The next day, Nurse Matakiewicz assured Eby that he could expect to receive his low bunk permit in ten to fourteen days (although she did not check the system to confirm its status). *Id.* ¶ 40–41.

Following the visit with Dr. Okezie, Eby asked the nurses, who administered his medication, daily about the status of his permit. *Id.* ¶ 42. After thirteen days, he began visiting the nurse's station to inquire about the permit. *Id.* ¶¶ 43–44. The nurses brushed him off and did not check the status of the permit; they simply informed him that the permit usually takes ten to fourteen days. *Id.* ¶¶ 42–43. Eby also wrote Dr. Okezie three letters inquiring about the permit, but Dr. Okezie never responded. *Id.* ¶ 45.

4

Then, around May 25, 2018, Eby's arm gave out as he was climbing to his top bunk. *Id.* ¶ 46. Unable to hold on, he fell to the concrete floor and injured his hip, back, knee, and ankle. *Id.* Nurses Angeloff and Tomaras prescribed him ice, crutches, and Ibuprofen. *Id.* Despite acknowledging Dr. Okezie's note about Eby's need for a low bunk permit, the nurses did not issue one, instead telling Eby to sleep on the floor. *Id.* At a subsequent visit about four days later, Eby witnessed Physician Assistant Williams and Nurse Harper resubmit a request for a low bunk permit to Dr. Okezie. *Id.* ¶ 47.

Eby received the low bunk permit on May 30, 2018, five months after his initial injury and five days after he fell. *Id.* ¶ 49. A few days later, IDOC moved him to a different cell where a low bunk was available. *Id.* Eby states that over the next two years, he experienced severe and ongoing pain in his left arm, shoulder, and back. *Id.* ¶ 53.

**B.    Procedural History**

In this lawsuit, Eby alleges that—although his need for a low bunk permit was "obvious and evident"—the medical staff at Stateville "took no steps" to provide him with a low bunk permit over the course of five months. *Id.* ¶ 55. In addition, he contends that they failed to "take reasonable action" to treat his shoulder injury. *Id.* According to Eby, these actions "further aggravated his already serious medical injury and exposed him to a daily substantial risk of falling." *Id.* ¶ 56. Thus, he asserts Defendants are at fault for the pain he suffered, his subsequent fall from his bunk, and the resulting injuries. *Id.* ¶ 58.

5

Eby's second amended complaint contains five counts alleging violations of 42 U.S.C. § 1983, the ADA, and the Rehabilitation Act. Defendants now move to dismiss all counts pursuant to Rule 12(b)(6). *See* Individual Medical Defs.' Mot. Dismiss, ECF No. 79; Def. Wexford's Mot. Dismiss, ECF No. 78; Def. IDOC's Mot. Dismiss, ECF No. 73.

## II. <u>Legal Standard</u>

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). Under Rule 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Under federal notice pleading standards, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*. Put differently, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

"In reviewing the sufficiency of a complaint under the plausibility standard, [courts] accept the well-pleaded facts in the complaint as true." *Alam v. Miller Brewing Co.*, 709 F.3d 662, 665–66 (7th Cir. 2013). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion."

6

*McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678).

### III. Analysis

Eby alleges a § 1983 claim against the Individual Medical Defendants and Sergeant Bailey in Count I. Compl. ¶¶ 60–66. In Counts II and III, Eby brings claims against Wexford under the ADA and Rehabilitation Act, respectively. *Id.* ¶¶ 67–86. Finally, Eby alleges ADA and Rehabilitation Act claims against IDOC in Counts IV and V. *Id.* ¶¶ 87–104.

**A. Count I Against Individual Defendants**

The Eighth Amendment protects the right of the people to be free from cruel and unusual punishment. U.S. Const. amend. VIII, XIV. The Supreme Court has interpreted the Eighth Amendment to impose a duty, applicable to states through the Fourteenth Amendment, "to provide adequate medical care to incarcerated individuals." *Boyce v. Moore*, 314 F.3d 884, 888–89 (7th Cir. 2002) (citing *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)).

As applied to an inmate's right to receive medical treatment, the Eighth Amendment requires a "two-step analysis." *See Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016). To succeed on such a claim, a plaintiff must show "(1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). Merely negligent medical treatment, alone, is not sufficient to constitute deliberate

7

indifference. *See Sellers v. Henman*, 41 F.3d 1100, 1102 (7th Cir. 1994) (citing *Gamble*, 429 U.S. at 106). Rather, to plead deliberate indifference, a plaintiff must allege that the defendants "actually knew of a substantial risk of harm to the inmate and acted or failed to act in disregard of that risk." *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002) (citing *Haley v. Gross*, 86 F.3d 630, 641 (7th Cir. 1996)). *See Howell v. Wexford Health Sources, Inc.*, 987 F.3d 647, 653 (7th Cir. 2021) (To show deliberate indifference, "a plaintiff must prove that a defendant actually knew of a serious health need.") (citing *Gamble*, 429 U.S. at 104–05).

That said, "[d]elaying treatment may constitute deliberate indifference if such delay 'exacerbated the injury or unnecessarily prolonged an inmate's pain.'" *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012) (quoting *McGowan v. Hulick*, 612 F.3d 636, 640 (7th Cir. 2010)).

### 1. Individual Medical Defendants

In their motion, the Individual Medical Defendants seek dismissal of Eby's § 1983 claim in Count I, arguing that Eby has failed to sufficiently plead that they had acted with deliberate indifference. *See id.* at 2–4. Specifically, the Individual Medical Defendants insist that, because Eby alleged in one paragraph that Dr. Okezie and Dr. Aguinaldo failed to take "reasonable action"—instead of using adjectives like "reckless, willful, or intentional" to describe Defendants' failures—he has fallen short of pleading the requisite level of indifference. *Id.* at 2–4 (quoting Compl. ¶ 55).

The Individual Medical Defendants' myopic focus on paragraph one, however, ignores the remainder of Eby's allegations. Under the Federal Rules, "a plaintiff is

8

not required to set forth a legal theory to match the facts, so long as some legal theory can be sustained on the facts pleaded in the complaint." *O'Grady v. Vill. of Libertyville*, 304 F.3d 719, 723 (7th Cir. 2002). Eby's second amended complaint pleads facts sufficient to state a claim of deliberate indifference.

Eby alleges that his original shoulder injury was severe and needed treatment, yet the medical staff at Stateville continuously rescheduled follow-up appointments over a two-month period. Compl. ¶¶ 32, 34. He further alleges that—despite constant pleas to medical staff—his requests for a low bunk permit were repeatedly ignored over the course of five months. *Id.* ¶ 55. All told, Eby pleads facts suggesting that the Individual Medical Defendants were aware of a substantial risk of harm but failed to act. *Id.* ¶ 64. And the complaint sufficiently alleges that the Individual Medical Defendants' delay further aggravated Eby's shoulder injury, culminating in his fall onto the concrete floor. *Id.* ¶¶ 46, 55–56. Given these detailed factual allegations, the Court concludes Eby's § 1983 claim adequately states a claim for relief, and the Individual Medical Defendants' motion is denied.

### 2. Sergeant Bailey

Sergeant Bailey also moves to dismiss Count I's § 1983 claim for failing to allege that he had acted with deliberate indifference. *See* Def. IDOC's Mot. Dismiss at 8–9. Specifically, he argues that "[t]here is no mention of or explanation of how Defendant Bailey would have known about Plaintiff's injury." *Id.* at 10.

But the complaint does allege that, "[u]pon information and belief, Sergeant Bailey was also aware of the Plaintiff's repeated requests for a low bunk permit due

9

to the extreme difficulty and aggravation to his injury climbing into and out of his top bunk." Compl. ¶ 38. And, at the pleading stage, this is enough. *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 442 (7th Cir. 2011) (holding that a plaintiff may plead based on information and belief when he has "a good-faith reason for believing what he is saying, but acknowledg[es] that his allegations are 'based on secondhand information that [he] believes to be true") (quoting BLACK'S LAW DICTIONARY 783 (7th ed. 1999); *Robinson v. Pfister*, No. 17 CV 1051, 2019 WL 4305527, at *7 (N.D. Ill. Sept. 11, 2019) (noting that "courts have 'routinely' found allegations on information and belief to be sufficient to survive a Rule 12(b)(6) motion") (quoting *Trustees of the Auto. Mechanics' Indus. Welfare & Pension Funds Loc. 701 v. Elmhurst Lincoln Mercury*, 677 F. Supp. 2d 1053, 1054 (N.D. Ill. 2010)).

Sergeant Bailey also challenges Eby's allegations based on lack of causation, arguing that he is not a medical professional and, thus, "was not responsible for issuing a low bunk permit." Def. IDOC's Mot. Dismiss at 10. While the Seventh Circuit has suggested that a defendant's lack of authority to issue a low bunk permit may defeat an Eighth Amendment claim, that case was decided at the summary judgment stage. *See Estate of Miller by Chassie v. Marberry*, 847 F.3d 425, 427 (7th Cir. 2017).

In *Estate of Miller*, a prisoner sued a correctional officer and the Warden of the plaintiff's place of incarceration after he fell out of an upper bunk and broke his back as a result of a brain tumor that reduced sensation in the left side of his body. *See id*

10

at 427–28. A divided panel of the Seventh Circuit affirmed summary judgment in favor of the defendants, reasoning that they were not "the people responsible for bunk assignments." *Id.* In that case, the undisputed facts demonstrated that the "prison's medical department [was] responsible for deciding who has a medical need for a lower bunk," not the defendants. *Id.* at 426. The court commented that "[a] lower-bunk assignment may have been well justified, but neither [defendant] knew the details, consequences, and appropriate accommodations of [the plaintiff's] medical condition." *Id.* at 428. Accordingly, summary judgment in favor of the defendants was warranted. *Id.* (rejecting the view that "every federal employee is responsible, on pain of damages, for not implementing the decision of any other federal employee").

But, in *Palmer v. Franz*, the Seventh Circuit came out the other way, finding that there was a disputed issue of fact and reversing the district court's grant of summary judgment to the defendants. 928 F.3d 560, 565 (7th Cir. 2019). There, the plaintiff fell to the floor while attempting to lower himself from his top bunk, then sued a nurse based on a short interaction during a medical screening when he requested a low bunk permit. *See Palmer v. Franz*, No. 13 C 1698, 2017 WL 4122741, at *5 (N.D. Ill. 2017), *rev'd and remanded*, 928 F.3d 560 (7th Cir. 2019). Relying on *Estate of Miller*, the district court granted the nurse's motion for summary judgment based on the "undisputed fact that [he] did not have the authority to issue low bunk permits." *Id.* The Seventh Circuit overturned on appeal based on testimony from an IDOC representative who said that the screening nurse could have given the plaintiff

11

a temporary low bunk pass during the screening, or the nurse could ensure that the inmate promptly saw a doctor. *Palmer II*, 928 F.3d at 565.

Here, Eby has asserted that Bailey knew about his injury and was "deliberately indifferent towards the Plaintiff's serious medical needs by failing to provide medical treatment, including failing to provide him with a low-bunk permit." Compl. ¶ 65. While Eby may have difficulty proving that Sergeant Bailey had the authority to issue a low bunk permit, that is a question better suited for summary judgment. Eby has alleged sufficient facts to survive a motion to dismiss, and Bailey's motion to dismiss Count I is denied.

**B.     Wexford (Counts II–III)**

   **1.     Wexford's Motion to Dismiss Count II**

Wexford first argues that Eby has failed to state a claim in Count II because Wexford is not a public entity under the ADA. *See* Def. Wexford's Mot. to Dismiss at 2–3. Wexford is correct that Title II of the ADA only provides a plaintiff relief against public entities. *See id.* at 2; *see also* 42 U.S.C. § 12132. The Act further specifies that the term "public entity" means "(A) any State or local government; (B) any department, agency, special purpose district, or other instrumentality of a State or States or local government; and (C) the National Railroad Passenger Corporation, and any commuter authority." 42 U.S.C. § 12131(1). Of these categories, the only grouping Wexford plausibly falls under is an "instrumentality of a State." Thus, the relevant question is whether Wexford is such an instrumentality.

12

Although the Seventh Circuit has not directly addressed this question, an emerging consensus from other circuits suggests that Wexford is not an instrumentality within the meaning of the ADA. *See, e.g.*, *Green v. City of N.Y.*, 465 F.3d 65, 79 (2d Cir. 2006). For example, in *Green v. City of New York*, the plaintiff filed an action against St. Luke's–Roosevelt Hospital Center, arguing that a private hospital was an "instrumentality" under Title II because it carried out a public function through a contract with the City of New York. *See id.* The Second Circuit rejected this argument on statutory interpretation grounds, finding that, since "agency," "department," and "special purpose district" all refer to "creature[s] of the municipality or state whose ends it serves," "instrumentality" should similarly be limited to entities that belong to or were created by the government. *Id.* Because the hospital was a "parallel private entity" and not a "creature of any governmental entity," the court reasoned, it was not an instrumentality. *Id.* The Third, Tenth and Eleventh Circuits have since adopted the Second Circuit's reasoning. *See Matthews v. Pennsylvania Dep't of Corr.*, 613 F. App'x 163, 170 (3d Cir. 2015); *Phillips v. Tiona*, 508 F. App'x 737, 754 (10th Cir. 2013); *Edison v. Douberly*, 604 F.3d 1307, 1310 (11th Cir. 2010).

Other district courts in this circuit have followed the Second Circuit's reasoning as well. *See, e.g.*, *Maxwell v. South Bend Work Release Center*, 787 F.Supp.2d 819, 822 (N.D. Ind. 2011); *see also McIntosh v. Corizon*, No. 214CV00099JMSMJD, 2018 WL 1456229, at *6 (S.D. Ind. Mar. 23, 2018). And several have addressed this very question, concluding that Wexford is not an

13

instrumentality despite its relationship to the state. *See Hogle v. Baldwin*, No. 117CV01059JBMJEH, 2017 WL 4125258, at *6 (C.D. Ill. 2017); *see also Lisle v. Baldwin*, No. 17-CV-1488-MMM, 2018 WL 3371040, at *2 (C.D. Ill. 2018) ("It is clear that a private corporation such as Wexford is not a public entity so as to come under the ADA.").

Because the Court is persuaded by the reasoning in *Green* and the courts that have followed it, the Court concludes that Wexford is not a public entity and grants Wexford's Motion to Dismiss Count II.

### 2.     Wexford's Motion to Dismiss Count III

Eby also alleges Wexford violated the Rehabilitation Act. *See* Compl. ¶¶ 78–86. The relief available under the ADA and the Rehabilitation Act is "coextensive," and the analysis is identical except that instead of "public entities," the Rehabilitation Act applies to parties that receive federal funds. *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671 (7th Cir. 2012) (citing *Barnes v. Gorman*, 536 U.S. 181, 189 & n.3 (2002)). Wexford moves to dismiss Count III, arguing that it does not receive federal funding.

Eby's second amended complaint alleges that, "[o]n information and belief, Wexford receives funding from the federal government as part of its contract with IDOC." Compl. ¶ 4. Wexford argues that Eby's first complaint contained no such allegation of federal funding, and, without any intervening discovery, Eby's new allegation is "speculative and conclusory." Def. Wexford's Rep. Supp. Mot. Dismiss at 6–7, ECF No. 92.

14

Whatever the merits of Wexford's argument, Eby's Count III claim must be dismissed, but for a different reason. The Seventh Circuit has rejected Rehabilitation Act claims against a party that receives federal funds indirectly via a contract with a state. *See Grzan v. Charter Hosp. of Nw. Ind.*, 104 F.3d 116, 120 (7th Cir. 1997) (quoting *Gallagher v. Croghan Colonial Bank*, 89 F.3d 275, 278 (6th Cir. 1996)) ("[C]overage of the Rehabilitation Act does not follow federal aid past the intended recipient to those who merely derive a benefit from the aid or receive compensation for services rendered pursuant to a contractual arrangement."). And this is exactly what Eby alleges here. Compl. ¶ 4. Accordingly, the Court grants Wexford's motion to dismiss Count III. *See id.*; *see also Wesley ex rel. Wesley v. Armor Corr. Health Servs., Inc.*, No. 19-CV-0918, 2019 WL 6255225, at *4 (E.D. Wis. 2019); *Boyden v. Conlin*, No. 17-CV-264-WMC, 2018 WL 2191733, at *8 (W.D. Wis. 2018).

## C. IDOC (Counts IV–V)

### 1. IDOC's Motion to Dismiss Count I

IDOC first argues that, because IDOC is a state agency, the Eleventh Amendment bars Eby from recovering money damages from IDOC under § 1983. *See* Def. IDOC's Mot. Dismiss at 3. But as Eby points out, he has not alleged that IDOC violated § 1983. *See* Pl.'s Resp. Opp'n Def. IDOC's Mot. Dismiss. Count I refers only to "all *individual* defendants," and Counts IV and V against IDOC only allege violations of the ADA and the Rehabilitation Act. Compl. at 10, ¶¶ 87–104 (emphasis added). As such, IDOC's motion to dismiss in Count I is moot.

15

### 2. IDOC's Motion to Dismiss Counts IV–V

IDOC next moves to dismiss Eby's ADA claim in Count IV and Rehabilitation Act claim in Count V. *See* Def. IDOC's Mot. Dismiss at 3–8. To state a claim under Title II of the ADA, a plaintiff must allege (1) that "he is a qualified individual with a disability"; (2) that "he was denied the benefits of the services, programs, or activities of a public entity or otherwise subjected to discrimination by such an entity"; and (3) "that the denial or discrimination was by reason of his disability." *Wagoner v. Lemmon*, 778 F.3d 586, 592 (7th Cir. 2015) (cleaned up). The standards under the ADA and Rehabilitation Act are "functionally identical," so the Court will consider both claims simultaneously. *Id.* And since "[p]lausibility is not an exacting standard," a plaintiff need only "plead facts which plausibly (even if improbably) support each element of his claim." *Jaros*, 684 F.3d at 672.

The majority of IDOC's arguments to dismiss Eby's claims are unavailing. They first argue that state prison officials can only be sued for declaratory and injunctive relief under the ADA, but this is mistaken. A plaintiff *can* recover money damages under Title II so long as he can establish that the defendants acted in violation of the ADA with deliberate indifference. *See Hildreth v. Butler*, 960 F.3d 420, 431 (7th Cir. 2020), *cert. denied*, 141 S. Ct. 1527 (2021). As in the Eighth Amendment § 1983 context, deliberate indifference "occurs when defendants '*knew* that harm to a federally protected right was substantially likely and . . . *failed* to act on that likelihood.'" *Id.* (quoting *Lacy v. Cook Cty.*, 897 F.3d 847, 862 (7th Cir. 2018)) (alteration in original).

16

IDOC next argues that Eby is not a "qualified individual with a disability," because he has not pled facts showing his impairment "substantially limited" a daily life activity. *See* Def. IDOC's Mot. Dismiss at 6. But Count IV plainly alleges that Eby's shoulder injury prevented him from lifting his arm, using his arm for everyday activities, sleeping, and climbing in and out of his bed. Compl. ¶ 89. Thus, Eby has alleged sufficient facts under the first prong.

The primary issue with Eby's complaint instead lies in his failure to plead deliberate indifference. The deliberate indifference standard to state a claim for damages requires "both (1) 'knowledge that a harm to a federally protected right is substantially likely,' and (2) 'a failure to act upon that likelihood.'" *Lacy v. Cook Cty.*, 897 F.3d 847, 863 (7th Cir. 2018) (quoting *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013)). Here, Eby's claim falls short on the first prong by failing to adequately allege IDOC's institutional knowledge of Eby's disability.

In his complaint, Eby alleges that "IDOC intentionally, or with deliberate indifference, discriminated against Eby on the basis of his disability by denying him a low-bunk permit." Compl. ¶ 94. Eby further alleges that his need for accommodations was "open and obvious to IDOC." Compl. ¶ 94. But "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citing *Papasan*, 478 U.S. at 286). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679.

17

Despite Eby's conclusory accusations against IDOC, he has alleged no specific facts suggesting how IDOC knew about the injury, other than stating that his injury was "open and obvious." Compl. ¶ 94. But a shoulder injury such as Eby's is unlikely to be the sort of "obvious" risk that would impute a defendant's knowledge of the injury. *Cf. Palmer II*, 928 F.3d at 564 (finding that a prisoner's congenital deformity of his left arm resulting in a missing hand was obvious). Ultimately, Eby's complaint lacks "sufficient factual matter" to state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678. As such, IDOC's motion to dismiss Counts IV and V is granted.

## IV. Conclusion

For the above-stated reasons, the Individual Medical Defendants' motion to dismiss Count I is denied; Sergeant Bailey's motion to dismiss Count I is denied; Wexford's motion to dismiss Counts II and III is granted; and IDOC's motion to dismiss Counts IV and V is granted.

**IT IS SO ORDERED.**  ENTERED 9/13/21

_____
**John Z. Lee**
**United States District Judge**

18