046724/21061/MHW/JFM/

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SCOTT EBY (N-91067),<br><br>       Plaintiff,<br><br>v.<br><br>WEXFORD HEALTH SOURCES, INC.; Dr. OKEZIE; DR. AGUINALDO; NURSE AMY; NURSE KRISTA; NURSE LYDIA L; TINA TOMARAS; ILLINOIS DEP'T OF CORRECTIONS; NURSE KARA; SERGEANT BAILY; LA TANYA WILLIAMS; ROZEL ELAZEGUI; WENDY DYBASS; LESLIE WILKING; AMY MARGARET RUE; MICHELLE L. DALTON; ALTHEA HARPER; VIRGINIA GARCIA; JERRI ANGELHOFF; GERALD DIMAILING; DAWN CETTA; CHRISTINE WITOWSKI; JENNFIER HENNING; EMANUEL EGBE; DINA PAGE,<br><br>       Defendants. | No. 19cv8404<br><br>Hon. Judge John Z. Lee |

## DEFENDANT, JENNIFER HENNING'S, ANSWER TO PLAINTIFF'S FIRST AMENDED COMPLAINT

NOW COME the Defendant, JENNIFER HENNING, by and through her attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and in Answer to Plaintiff, SCOTT EBY's, First Amended Complaint, states as follows:

## PARTIES, JURISDICTION, & VENUE

1.     This action is brought pursuant to the Eighth and Fourteenth Amendments to the U.S. Constitution, 42 U.S.C. § 1983, the Americans with Disability Act 42 U.S.C. § 12101 et seq. (the "ADA"), and the Rehabilitation Act 29 U.S.C. § 701 et seq. (the "Rehabilitation Act").

**ANSWER:**    The Defendant admits only that Plaintiff brings an action pursuant to those statutes while denying that Plaintiff has set forth a cognizable claim entitling him to relief under those statutes.

2.     Plaintiff is an individual who, at all times relevant to this lawsuit, was incarcerated at Stateville Correctional Center ("Stateville").

**ANSWER:**    The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph.

3.     Defendant Illinois Department of Corrections ("IDOC") is a part of the State of Illinois that is subject to the requirements of the ADA. IDOC receives funding from the federal government.

**ANSWER:**    The Defendant admits only that IDOC is part of the State of Illinois but lack sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations set forth in this paragraph.

4.     Defendant Wexford Health Sources, Inc. ("Wexford") is a corporation contracted to provide medical services in prisons in Illinois that is subject to the requirements of the ADA. On information and belief, Wexford directly contracts with the State of Illinois through IDOC. On information and belief, Wexford receives funding from the federal government as part of its contract with IDOC.

**ANSWER:**    The Defendant admits only that Wexford is a corporation contracted to provide certain medical services to prisons in Illinois.  This Court has ruled that Wexford is not subject to the ADA and dismissed those claims.  [Dkt. # 123 at 13-14].  The Defendant lacks sufficient information and knowledge from which to base a belief as to the remaining allegations.

5.     Defendant Dr. Christian Okezie is an individual who, at all times relevant to this lawsuit, was the medical director and a physician treating inmates at Stateville and was, on information and belief, employed by Wexford.

**ANSWER:**    The Defendant admits only that Dr. Okezie was a Wexford-employed physician treating inmates at Stateville for a specified period of time.

6.     Defendant Dr. Evaristo Aguinaldo is an individual who, at all times relevant to this lawsuit, was a physician treating inmates at Stateville and was, on information and belief, employed by Wexford.

**ANSWER:** The Defendant admits only that Dr. Aguinaldo was a Wexford-employed physician treating inmates at Stateville for a specified period of time.

7. Defendant Tina Tomaras is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

8. Defendant Kara Matakiewicz is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

9. Defendant Amy Bartlett is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

10. Defendant Krista Carnahan is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

11. Defendant Lidia Lewandowska is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

12. Defendant Sergeant Kenyon Bailey is, on information and belief, employed by IDOC as a cellhouse sergeant at Stateville.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph.

13. Defendant LaTonya Williams is a physician assistant who, at all times relevant, worked as Stateville and on information and belief treated Plaintiff.

**ANSWER:** The Defendant admits only that PA Williams was a Wexford-employed physician assistant treating inmates at Stateville for a specified period of time. The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

14. Defendant Dr. Rozel Elazegui is an individual who, at all times relevant to this lawsuit, was the medical director and a physician treating inmates at Stateville and was, on information and belief, employed by Wexford.

**ANSWER:** The Defendant admits only that Dr. Elazegui was a Wexford-employed physician treating inmates at Stateville for a specified period of time.

15. Defendant Wendy Dybass is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

16. Defendant Leslie Wilking is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

17. Defendant Amy Rue is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

18.     Defendant Michelle Dalton is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:**     The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

19.     Defendant Alethea Harper is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:**     The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

20.     Defendant Virginia Garcia is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:**     The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

21.     Defendant Jeri Angeloff is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:**     The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

22.     Defendant Gerlad Dimailig is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:**     The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

23.     Defendant Dawn Cetta is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:**     The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

24. Defendant Dina Page is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC. The Defendant denies that Dina Page is a Defendant because Plaintiff dismissed her on April 14, 2021. [Dkt. # 121].

25. Defendant Christine Witkowski is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC. The Defendant denies that Christine Witkowski is a Defendant because Plaintiff dismissed her on April 14, 2021. [Dkt. # 121].

26. Defendant Jennifer Henning is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:** The Defendant admits only that this Defendant was a Wexford-employed nurse working at Stateville for a specified period of time. This Defendant lacks sufficient information and knowledge from which to base a belief as to the remaining allegations set forth in this paragraph because this Defendant is not yet in possession of the Plaintiff's full IDOC chart.

27. Defendant Emmanuel Egbe is a nurse who, at all times relevant to this lawsuit, worked at Stateville and on information and belief treated Plaintiff.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the remaining allegations as the Defendant is not yet in possession of Plaintiff's full chart from the IDOC.

28. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because Plaintiff's claims all arise under the Constitution and laws of the United States of America.

**ANSWER:** The Defendant admits only that the Court has jurisdiction of the claim under that statute while denying that Plaintiff has set forth any cognizable claim entitling him to relief.

29.     This Court has personal jurisdiction over each of the Defendants because each of them engaged in the acts constituting the basis for this lawsuit within the State of Illinois, specifically at Stateville Correctional Center.

**ANSWER:**     The Defendant admits only that personal jurisdiction exists over the named-Defendants while denying that Plaintiff has set forth any cognizable claim entitling him to relief against any named Defendant.

30.     This Court is the proper venue for this lawsuit pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to Plaintiff's claims took place within the Northern District of Illinois.

**ANSWER:**     The Defendant admits only that venue is proper in this Court while denying that Plaintiff has set forth any cognizable claim entitling him to relief.

## COMMON ALLEGATIONS

31.     On or around December 26, 2017, Plaintiff suffered a severe left shoulder injury while exercising at Stateville.

**ANSWER:**     The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

32.     Plaintiff experienced extreme pain and his mobility was directly affected by this serious medical injury. The injury prevented him from lifting his arm, using his arm fully for everyday activities, sleeping, and using his arm to climb into and out of the top of a bunk bed such as those assigned to prisoners at Stateville. As a result, Plaintiff was limited to either aggravating his injury by climbing to his assigned top bunk, or sleeping on the concrete floor of his cell.

**ANSWER:**     The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

33.     Plaintiff first received medical treatment on or around December 28, 2017, upon information and belief from either a Dr. Okezie, the medical director at Stateville, or Dr. Rozel

Elazegui, and the nurses on duty, Wendy Dybass and Leslie Wilking. This treatment consisted of an examination and providing Robaxin, and Motrin. At this time the Plaintiff was denied a low bunk permit despite the severe pain, swelling, and limited motion in Plaintiff's left shoulder and his expressed inability to climb to his top bunk interfering with his ability to sleep.

**ANSWER:**    The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

34.    On or around January 2, 2018, the Plaintiff was given an x-ray that was ordered by either Dr. Okezie or Dr. Elazegui. Plaintiff was informed that he would have a follow up appointment with either Dr. Elazegui, Dr. Okezie, or Dr. Aguinaldo. However, these follow up appointments were continuously rescheduled over the course of the next two months.

**ANSWER:**    The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

35.    While anxiously waiting for his follow up appointment, Plaintiff visited the nurse's station at the health care unit multiple times to report the severe pain in this left shoulder interfering with his ability to sleep, his need for a low bunk permit, and to check on the status of his scheduled follow up appointment. Each time the nurses, medical staff and medical technicians on duty simply informed the Plaintiff that his follow up appointments had been rescheduled and ignored his repeated requests for a low bunk permit. This pattern of events specifically occurred with Nurse Amy Rue on January 11, 2018 and Nurse Lidia Lewandowska on February 23, 2018.

**ANSWER:**    The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

36.    Finally, on March 6, 2018, the Plaintiff was seen by Nurse Amy Rue and Dr. Aguinaldo for a follow up appointment regarding the x-rays taken approximately two months

prior. At this appointment, the Plaintiff once again reiterated the constant and extreme pain he felt in his left shoulder and the exasperating effects on his left shoulder from having to climb to the top bunk and interfering with his ability to sleep. The Plaintiff pleaded with Dr. Aguinaldo for a low bunk permit but Dr. Aguinaldo informed Plaintiff that only the medical director, Dr. Okezie could issue a low bunk permit. Dr. Aguinaldo refused to look further into the matter and scheduled a follow up appointment for the Plaintiff with Dr. Okezie.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

37. After waiting for another three weeks, the Plaintiff visited the nurse's station to inquire about the follow up appointment with Dr. Okezie and his need for a low bunk permit. Again the nurses, medical staff and medical technicians, including Nurse Michelle Dalton, merely reassured the Plaintiff that his appointment was scheduled for a future date and ignored his low bunk permit request.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

38. As a result, Plaintiff laid for many weeks on the floor of his cell overnight as the injury to his left shoulder prevented him from pulling himself up to his assigned top bunk. This continued until on or around March 31, 2018, when Sergeant Kenyon Bailey, the cellhouse sergeant at Stateville, ordered Plaintiff to stop laying on the floor overnight even though he knew of the Plaintiff's injury and the severe pain he was experiencing. This forced the Plaintiff to further aggravate the injury to his left shoulder and further interfere with his ability to sleep. Upon information and belief, Sergeant Bailey was also aware of the Plaintiff's repeated requests for a low bunk permit due to the extreme difficulty and aggravation to his injury climbing into and out of his top bunk.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

39. Four weeks later, on or around April 6, 2018, the Plaintiff had a follow up appointment, but it was not with Dr. Okezie. Instead, Plaintiff saw Physician Assistant, La Tonya Williams and Nurse Alethea Harper, to whom he again stressed the severe pain in his left shoulder, his lack of mobility, and the difficulty he had climbing up to the top bunk interfering with this ability to sleep and causing him more pain and irritation. Once again, the Plaintiff was not given a low bunk permit.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

40. Finally, on April 19, 2018, almost four months after the injury to his left shoulder, Plaintiff was seen by Dr. Okezie, Nurse Kara Matakiewicz, and Nurse Virginia Garcia. During this visit, Dr. Okezie examined the Plaintiff and informed him that he may have a torn rotator cuff and that his injury was significant. As a result, Dr. Okezie ordered, among other things, a new chest x-ray, a referral for a magnetic resonance imaging ("MRI"), Robaxin, Tramadol, and he told Plaintiff he would grant him a low bunk permit.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

41. The next day on April 20, 2018, the Plaintiff saw Nurse Kara Matakiewicz and asked if the low bunk permit was filled out by Dr. Okezie the previous day. Nurse Kara Matakiewicz did not check on the low bunk permit status but rather assured the Plaintiff that it was filled out and he should receive it in 10-14 days.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

42.     Following this visit with Dr. Okezie, Plaintiff received his medication as ordered, but he did not receive the low bunk permit. Every day the Plaintiff asked the multiple nurses who delivered his medication both in the morning and evening why he hadn't received his low bunk permit that Dr. Okezie ordered. The nurses, including upon information and belief Nurse Amy Rue, Nurse Krista Carnahan, Nurse Gerald Dimailig, Nurse Tina Tomaras, Nurse Dawn Cetta, Nurse Dina Page, Nurse Christine Witowski, Nurse Jerri Angeloff, Nurse Emmanuel Egbe, and Nurse Jennifer Henning, and other medical staff or medical technicians, merely responded that it normally takes ten to fourteen days to receive a low bunk permit and refused to check on the status for him.

**ANSWER:**   The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

43.     The Plaintiff grew very concerned that he would not get his low bunk permit and since the pain was still severe and he continued to have difficulty on a daily basis climbing to the top bunk, Plaintiff visited the nurse's station on or around May 2, 2018. He again inquired about the status of his low bunk permit that Dr. Okezie ordered, but the nurses, including Nurse Lidia Lewandowska, did not check on the status of the permit but instead simply informed him that he would receive it in the mail.

**ANSWER:**   The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

44.     After that, Plaintiff continued to make multiple visits to the nurse's station at the health care unit asking about his low bunk permit but was never provided any assistance on checking the status of that permit by the multiple nurses, medical staff or medical technicians on duty.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

45. Also during this time, Plaintiff wrote three letters to Dr. Okezie informing Dr. Okezie that he was experiencing severe pain in his left shoulder and due to that pain he was having extreme difficulty moving his arm and climbing in and out of his top bunk. He repeatedly requested for the low bunk permit Dr. Okezie had told him he would grant him. Upon information and belief, Dr. Okezie never responded to the Plaintiff's letters.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

46. Eventually, on or around May 25, 2018, the pain was so severe that while attempting to climb to his assigned top bunk, the strength and mobility in Plaintiff's arm gave out entirely. As a result, Plaintiff fell to the concrete floor of his cell injuring his hip, back, knee and ankle. Plaintiff was taken to the health care unit in a wheelchair and was examined by Nurse Jerri Angeloff Nurse Tina Tomaras who issued him an ice permit, crutches, and Ibuprofen but did not issue him a low bunk permit even though Nurse Tina Tomaras saw Dr. Okezie's notes regarding a low bunk permit and Plaintiff informed her that Dr. Okzekie had ordered one. Nurse Tina Tomaras told him to sleep on the floor in the meantime. Plaintiff was scheduled for a follow up to be seen by a physician and sent back to his cell.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

47. Due to the extensive injuries and pain the Plaintiff was in, he slept on the floor of his cell for three days before being seen at his follow up appointment by Physician Assistant LaTonya Williams and Nurse Alethea Harper. At this appointment on or around May 29, 2018, the Plaintiff was given three shots for his pain in his lower back and prescribed Tramadol. X-rays

were also ordered for his lower back and hip, and his request for a low bunk permit was submitted to Dr. Okezie.

**ANSWER:**   The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

48.   The Plaintiff suffered additional serious medical injuries as a result of the fall due to not having a low bunk permit. On information and belief, tests showed that the Plaintiff suffered from a herniated disk between his L4 and L5 vertebra.

**ANSWER:**   The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

49.   On or around May 30, 2018, the Plaintiff finally received his low bunk permit. However, it wasn't until on or around June 1, 2018 that the Plaintiff was moved to a different cell so that he could actually use his low bunk permit and sleep on a low bunk.

**ANSWER:**   The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

50.   On or around June 14, 2018, Dr. Okezie examined Plaintiff at a follow up appointment. Dr. Okezie issued Plaintiff a low bunk permit, a double mattress order, and a low gallery permit for a six-month period.

**ANSWER:**   The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

51.   On August 21, 2018, the MRI was completed and showed significant shoulder injuries.

**ANSWER:**   The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

52.    Since August of 2018, Plaintiff has had countless follow up visits with either, Dr. Okezie, Dr. Aguinaldo, Physician Assistant Williams, other doctors on duty at IDOC, as well as eventually being transported to the University of Illinois Chicago Hospital for an additional MRI and orthopedic evaluations.

**ANSWER:**    The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

53.    In addition, over the course of the last two years, the Plaintiff has continued to experience ongoing severe pain from the serious injury to his left arm, shoulder and back. As a result, Plaintiff has been given minimal medications for pain management, steroid shots in his back, and physical therapy treatments for his left arm and shoulder.

**ANSWER:**    The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

54.    The Plaintiff's pain from his injury continues to this present day. As recently as September 2, 2020, the Plaintiff was transported to the University of Illinois Chicago Hospital for another steroid shot in his back as treatment for the disc injuries related to his fall from May 25, 2018.

**ANSWER:**    The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

55.    Despite Plaintiff's obvious and evident need for a low bunk permit and Plaintiff's multiple requests for this low bunk permit over the course of five months in 2018, the nurses, physician assistants, Dr. Okezie and Dr. Aguinaldo took no steps to provide Plaintiff with a low bunk permit, nor did they take reasonable action to treat the Plaintiff's left shoulder injury.

**ANSWER:**    The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

56.     By not granting Plaintiff a low bunk permit, this caused Plaintiff to climb nightly up to his assigned top bunk which further aggravated his already serious medical injury and exposed him to a daily substantial risk of falling.

**ANSWER:**     The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

57.     Ultimately, the Plaintiff was significantly harmed by this risk when he fell as he was climbing to his assigned top bunk.

**ANSWER:**     The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

58.     Not only did this lack of accommodation to the Plaintiff cause the Plaintiff to fall and sustain more injuries, but it also deprived of him of his right to sleep on his assigned bed as his only other choice was to sleep on the concrete floor.

**ANSWER:**     The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

59.     During the Plaintiff's confinement at Stateville, he filed several grievances and exhausted the administrative remedies available prior to filing this action.

**ANSWER:**     The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical, grievance, and ARB records.

## COUNT I – 42 U.S.C. § 1983 (all individual defendants)

60.     Count I is directed solely to the individual defendants.

**ANSWER:**     The Defendant admits only that Plaintiff has pled Count 1 against the individual defendants.

61.     Plaintiff realleges Paragraph 1 to 59 of the First Amended Complaint as fully set forth in Count I.

**ANSWER:** The Defendant re-states its responses for paragraphs 1-59 as though fully set forth herein.

62. Plaintiff suffered a serious shoulder injury during December 2017. This shoulder injury was an objectively serious medical condition.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

63. Following his injury, Plaintiff required a low-bunk permit; without a low-bunk permit, Plaintiff faced a substantial risk of harm due to his existing shoulder injury.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

64. Each of the individual Defendants knew of Plaintiff's objectively serious medical condition, his need for a low-bunk permit, and the harm that would result if he was not granted his request for a low-bunk permit.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

65. Each of the individual Defendants were deliberately indifferent towards the Plaintiff's serious medical needs by failing to provide medical treatment, including failing to provide him with a low-bunk permit.

**ANSWER:** Denied.

66. Plaintiff sustained serious injuries and damages as a result of the individual Defendants' conduct and being improperly denied a low-bunk permit including (a) sleeping on the floor of his cell to avoid climbing into a top bunk; (b) ongoing pain related to climbing into and out of a top bunk and eventually falling; and (c) injuring himself while attempting to climb into a top bunk.

**ANSWER:** The Defendant lacks sufficient information and knowledge from which to base a belief as to the truth or veracity of the allegations set forth in this paragraph as the Defendant is not yet in possession of Plaintiff's IDOC medical records.

WHEREFORE, the Defendant, denies that the Plaintiff is entitled to any relief whatsoever claimed or demanded in Count I, and requests that this Court enter judgment in Defendant's favor on this Count, with an award of costs and fees.

### COUNT II -ADA (Wexford)

The allegations in Count I, paragraphs 67 through 77 are expressly directed against another Defendant, and not this particular Defendant. Accordingly, this Defendant makes no response to those allegations. To the degree that any of the allegations in Count II, paragraphs 67 through 77 are actually directed against this Defendant, then those allegations are denied.

### COUNT III -Rehabilitation Act (Wexford)

The allegations in Count III, paragraphs 78 through 86 are expressly directed against another Defendant, and not this particular Defendant. Accordingly, this Defendant makes no response to those allegations. To the degree that any of the allegations in Count III, paragraphs 78 through 86 are actually directed against this Defendant, then those allegations are denied.

### COUNT IV – ADA (IDOC)

The allegations in Count IV, paragraphs 87 through 95 are expressly directed against another Defendant, and not this particular Defendant. Accordingly, this Defendant makes no response to those allegations. To the degree that any of the allegations in Count IV, paragraphs 87 through 95 are actually directed against this Defendant, then those allegations are denied.

### COUNT V – REHABILITATION ACT (IDOC)

The allegations in Count V, paragraphs 96 through 104 are expressly directed against another Defendant, and not this particular Defendant. Accordingly, this Defendant makes no

response to those allegations. To the degree that any of the allegations in Count V, paragraphs 96 through 104 are actually directed against this Defendants, then those allegations are denied.

## AFFIRMATIVE DEFENSES

NOW COMES, Defendant, JENNIFER HENNING, by and through her attorneys, Matthew H. Weller and James F. Maruna, of CASSIDAY SCHADE LLP, and for her Affirmative Defenses to Plaintiff's First Amended Complaint, states as follows:

### FIRST AFFIRMATIVE DEFENSE
**Failure to Exhaust Administrative Remedies**

1.     Federal law mandates that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal Law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a)..

2.     The administrative remedies applicable to the Plaintiff in the instant action can be found at 20 Ill. Admin. Rule § 504.800 - 870. Effectively, this Plaintiff was required to complete three administrative steps in order to exhaust his remedies:

(1)     attempt to resolve his complaint informally through his/her Counselor;

(2)     file a written grievance to the Grievance Officer within 60 days of discovery of his complaint; and

(3)     file an appeal to the Director within 30 days after the date of the decision with respect to his written grievance.

*See* 20 Ill. Admin. Rule § 504.810, § 504.850

3.     While Plaintiff's Complaint pleads that he fully exhausted, he makes no mention of how he did so and what he specifically grieved.  Nor does he provide any evidence of a grievance or Administrative Review Board decision.

4.     Thus, to the extent Plaintiff has failed to exhaust his administrative remedies against Wexford, prior to the filing of this suit, his claims are barred.

WHEREFORE, the Defendant, respectfully requests that this Honorable Court grant judgment in the Defendant's favor and against the Plaintiff, award fees and costs, and deny the Plaintiff any requested relief, whatsoever.

<u>SECOND AFFIRMATIVE DEFENSE</u>
**Failure to Exercise Reasonable Care and to Mitigate Damages**

1.     The sole proximate cause of the injuries and damages alleged by the Plaintiff was the Plaintiff's failure to exercise reasonable care for his own well-being.

2.     Plaintiff has failed to mitigate damages as required by law.  The duty to mitigate damages is applicable to a prisoner's medical claims made pursuant to Section 1983.  See *Mister v. Dart*, No. 13-CV-1578, 2014 U.S. Dist. LEXIS 87576, *2, 2014 WL 2922830 (N.D. Ill. June 26, 2014).  A Section 1983 affirmative defense based on a failure to mitigate damages is sufficiently pled without additional facts at the outset of a case. *Id.* at *7, 2014 U.S. Dist. LEXIS 87576.

WHEREFORE, the Defendant, respectfully requests that this Honorable Court grant judgment in the Defendant's favor and against the Plaintiff, award fees and costs, and deny the Plaintiff any requested relief, whatsoever.

<u>THIRD AFFIRMATIVE DEFENSE</u>
**Defendant Acted in Good Faith/Immunity**

1.     At all times relevant herein, Defendant acted in good faith in the performance of its official duties and without violating Plaintiff's statutory or constitutional rights of which a

reasonable person would have known. Therefore, the doctrine of qualified immunity protects this Defendant from this lawsuit. "Qualified immunity shields [officials] from civil damages liability so long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Leaf v. Shelnutt*, 400 F.3d 1070, 1079-80 (7th Cir. 2005) (citing *Anderson v. Creighton*, 483 U.S. 635, 638-39 (1987)).

2.   The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).

3.   The United States Supreme Court regards as beneficial, the two-step sequence for resolving government officials' immunity claims articulated in *Saucier v. Katz*, 533 U.S. 194 (2001); *see also Pearson*, 555 U.S. at 236 ("Although we now hold that the *Saucier* protocol should not be regarded as mandatory in all cases, we continue to recognize that it is often beneficial…"). First, a court must decide whether the facts, as alleged by the plaintiff, make out a violation of a constitutional right. *Id*. at 232. Second, the court must decide whether the right at issue was "clearly established" at the time of the defendant's alleged misconduct. *Id*. In order to show that the right was clearly established, the plaintiff must show that the defendant's "violation [of the constitutional right] was so clear that an official would realize he or she was violating an inmate's constitutional rights." *Borello v. Allison*, 446 F.3d 742, 750 (7th Cir. 2006).

4.   Plaintiff's First Amended Complaint alleges that Defendant provided medical care and treatment to the Plaintiff while he was incarcerated at a prison. At no time did any provider render medical care that was so clearly a violation of the Plaintiff's constitutional rights that the provider would realize that he or she was providing medical care tantamount to cruel and

unusual punishment. Thus, the doctrine of qualified immunity applies and shields Defendant from liability.

5.      Defendant further recognizes that the Seventh Circuit has suggested, in *dicta*, that qualified immunity is not available to private medical personnel in state-run prisons. *See Petties v. Carter*, 836 F.3d 722, 733-34 (7th Cir. 2016) (en banc). However, the United States Supreme Court's decision in *Filarsky v. Delia*, 566 U.S. 377, 390 (2012) controls and establishes that immunity is available to a government's private contractors who are performing jobs that, otherwise, would be performed by state agents, who unquestionably could assert qualified immunity.

6.      In *Filarsky*, the Supreme Court, unanimously, held that a private attorney hired by a municipality to perform a task was entitled to claim qualified immunity. 566 U.S. at 390 ("Affording immunity not only to public employees but also to others acting on behalf of the government similarly serves to ensure that talented candidates are not deterred by the threat of damages suits from entering public service") (internal marks omitted).

7.      Other Circuits follow *Filarsky* and apply qualified immunity to private medical providers working in state-run prisons. In a decision handed down after *Petties*, the Tenth Circuit Court of Appeals found that *Filarsky* controlled and applied qualified immunity to a private doctor working in a state prison. *Estate of Lockett v. Fallin*, 841 F.3d 1098, 1108-09 (10th Cir. 2016) ("Dr. Doe stands in the same position as the attorney in *Filarsky* – he was a private party hired to do a job for which a permanent government employee would have received qualified immunity. Thus, we conclude that qualified immunity applies to Dr. Doe.").

8.      The Supreme Court's decision in *Filarsky* combined with the case law of other Courts of Appeal establish that qualified immunity applies to private medical providers

performing medical services in a state-run prison. Therefore, Defendant has a non-frivolous argument for extending, modifying, or reversing existing law in this Circuit.

WHEREFORE, the Defendant, respectfully requests that this Honorable Court grant judgment in the Defendant's favor and against the Plaintiff, award fees and costs, and deny the Plaintiff any requested relief, whatsoever.

<u>FOURTH AFFIRMATIVE DEFENSE</u>
**STATUTE OF LIMITATIONS**

1.     The Plaintiff's claims should be dismissed pursuant to the statute of limitations affirmative defense.

2.     In a Section 1983 claim, the Court looks to state law in order to supply the statute of limitations. *Heard v. Sheahan,* 253 F.3d 316, 317 (7th Cir. 2001). Federal courts apply the statute of limitation for the tort most closely analogous to the Section 1983 claim asserted. *Devbrow v. Kalu,* 704 F.3d 765, 768 (7th Cir. 2013). For a claim of deliberate indifference prefaced on medical treatment, that statute of limitation is medical malpractice. *Id.* In Illinois, medical malpractice claims must be brought within two years of accrual. *Ray v. Maher*, 662 F.3d 770, 773 (7th Cir. 2011) (citing 725 ILCS 5/13-202). A claim accrues when all of the elements of the claim have occurred so that the Plaintiff can file suit and obtain relief. *CTS Corp. v. Waldburger,* 134 S. Ct. 2175, 2182 (2014).

3.     To the degree that Plaintiff must grieve his claims, and has yet to do so, the statute of limitations now bars those claims because more than two years elapsed after his claims accrued.

WHEREFORE, the Defendant, respectfully requests that this Honorable Court grant judgment in the Defendant's favor and against the Plaintiff, award fees and costs, and deny the Plaintiff any requested relief, whatsoever.

## **JURY DEMAND**

Defendant hereby demands a jury trial on all triable issues.

Respectfully submitted,

JENNIFER HENNING

By:  /s/ James F. Maruna

Matthew H. Weller / ARDC No. 6278685
James F. Maruna / ARDC No. 6313433
CASSIDAY SCHADE, LLP
222 W Adams, # 2900
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 - Fax
mweller@cassiday.com
jmaruna@cassiday.com

*Counsel for the Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 14, 2021 I electronically filed the foregoing document with the clerk of the court for the Northern District of Illinois, using the electronic case filing system of the court.  The electronic case filing system sent a "Notice of E-Filing" to the attorneys of record in this case.

<u>/s/ James F. Maruna</u>

9989226 JMARUNA;CRITCHEY